# U. S. DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Carl A. Anderson

       Plaintiff,         CASE NO._____
                                      Jdge: Hon.
                                   Magistrate Jdge: Hon.

v.

Kenneth W. Hawk, The Bank of
New York Mellon Trust Company
N.A., f/k/a The Bank of New York
Trust Company, N.A., as Trustee
for Chase Mortgage Trust Series
2007-A1, Chase Manhattan Bank
USA, N.A. and Chase Home Finance
LLC,

       Defendants.

_____

Herman J. Anderson, PLLC
By: Herman J. Anderson (P10173)
Attorneys for Plaintiff
P. O. Box 14850
Detroit, MI 48214-9998
(313) 331-2964 Fax: (313) 499-1129
Email: hermatty@comcast.net
_____

**COMPLAINT FOR BREACH OF CONTRACT, COMPLAINT FOR MODIFICATION AND REFORMATION OF THE LEASE, COMPLAINT FOR A PRELIMINARY AND PERMANENT INJUNCTION AND COMPLAINT FOR A DECLARATORY JUDGEMENT**

## JURISDICTION –DIVERSITY AND AMOUNT IN CONTROVERSY

**DIVERSITY OF CITIZENSHIP**

1. Carl A. Anderson, the Plaintiff, ("Plaintiff") is a resident and citizen of the State of Michigan.

2. The Defendant, Kenneth W. Hawk, ("Hawk") is a resident and citizen of the State of Arizona.

3. The Defendant, The Bank of New York Mellon Trust Company N. A., f/k/a The Bank of New York Trust Company, N. A., as Trustee for Chase Mortgage Trust Series 2007-A1 ("BNY Mellon") is a national banking association having its principal place of business and corporate headquarters located at One Wall Street, New York, NY 10286.

4. The Defendant, Chase Manhattan Bank, USA, N.A. (" Chase Bank") is a national banking association, having its principal place of business at 200 White Clay Center Drive, Route 273, Newark, DE 19711.

5. The Defendant, Chase Home Finance, LLC, ("Chase Home Finance") is a wholly owned subsidiary and division of JPMorgan Chase & Co. ("JPM"), a national banking association, having its principal place of business at 8333 Ridgepoint Drive, Irving, TX 75063-5812.

**JURISDICTION –VENUE**

6. Venue is appropriate pursuant to 28 US.C. § 1391. Venue is properly laid and jurisdiction is vested in this Court, because the subject matter of this controversy involves real estate that is situated in the City of Grosse Pointe Park, Wayne County, Michigan; and all the Defendants have transacted business in the City of Grosse Pointe Park, Wayne County, Michigan.

**JURISDICTION–AMOUNT IN CONTROVERSY**

7. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

**THE PARTIES**

8. The Plaintiff, on November 5, 2010, for some time prior thereto and at all times hereafter relevant, is an occupant of real property situated at 1012 Three Mile Drive, (the "real estate") in the City of Grosse Pointe Park, County of Wayne, and State of Michigan

9. The Defendant Hawk and non-party Karen Hawk, (Hawk's ex-wife) on November 5, 2010, for some time prior thereto and at all times hereafter relevant, are co-owners of the real estate implicated in this controversy ("real estate").

10. The Defendant, BNY Mellon , on November 5, 2010, for some time prior thereto and at all times hereafter relevant, is the owner of the 1st mortgage lien that encumbers the real estate.

11. The Defendant, BNY Mellon, on November 5, 2010, for some time prior thereto and at all times hereafter relevant, is the owner, or former owner of the 2nd mortgage lien that encumbers the real estate.

12. The Defendant, Chase Home Finance, on November 5, 2010, for some time prior thereto and at all times hereafter relevant, is the servicer and/or present owner of the 1st mortgage lien that encumbers the real estate.

**COMMON ALLEGATIONS**

13. On January 14, 2004, the Defendant Hawk and non-party Karen L. Hawk, as husband and wife, (the "owners of the real estate") purchased the real estate, paying a sum in excess of 1.1 million dollars.

14. The purchase of the real estate was financed by a loan for $956, 250.00, that was secured by a purchase money mortgage (the 1st mortgage lien which encumbers the real estate), which the owners of the real estate obtained from Defendant Chase Mortgage.

15. The owners of the real estate executed an adjustable rate mortgage note where they agreed to re-pay the $956,250.000.00 loan, together with interest at the rate of 5.25% per annum, in 360 monthly installments of approximately $5,300.00, plus payment of the annual real estate taxes and hazard insurance.

16. On April 16, 2004, the owners of the real estate, borrowed $127,500.00 (the "2nd loan") from the Defendant, Chase Bank.

17. Repayment of the 2nd loan is secured by a 2nd mortgage lien, called a "Home Equity Line of Credit Mortgage", which also encumbers the real estate.

18. The owners agreed to re-pay the 2nd loan, in monthly installments of approximately $350.00.

19. On August 18, 2007, Plaintiff and the Defendant Hawk executed a Contract for Deed ("Land Contract") where the Defendant agreed to pay the Plaintiff 1.3 million dollars for the real estate upon the following terms: $20,000.00 upon the execution of the Land Contract; an additional $20,000.00 on or before September 17, 2007; 60 monthly payments beginning on October 1, 2007, of $7,554.34, together with interest at the rate of 5.25% per annum, plus payment of the annual real estate taxes and hazard insurance; and a final balloon payment of $525,366.95, which would become due on August 30, 2012.

20. On January 1, 2010, because the Plaintiff could not and did not pay the agreed upon $7,554.34 monthly land contract payments, the Plaintiff and the Defendant Hawk agreed to waive the performance of the payment obligation mandated by the Land Contract; to terminate the Land Contract; and to substitute in its place and stead, a one-year Lease of the real estate, where the Plaintiff promised to pay the Defendant Hawk $5,000.00 monthly, for the rental of the real estate.

21. On July 16, 2010, because the Plaintiff could not and did not pay Defendant Hawk, the agreed upon $5,000.00 monthly payment for the rental of the real estate, the Defendant Hawk, as Plaintiff, filed a Complaint for Non-Payment of Rent, in the Grosse Pointe Park, Wayne County, Michigan Municipal Court (the "Court").

22. On July 28, 2010, a Consent Judgment was entered.     THe Consent Judgment provided that:

> "A Writ of Restitution will not issue so long as the Defendant (the Plaintiff Anderson herein) pays $7,000.00 monthly by no later than 8/15/10, 9/30/10, 10/31/10; 11/30/10 and 12/31/10."

4

23. The Plaintiff paid the Defendant Hawk, pursuant to the terms of the Consent Judgment, the $7,000.00 due on 8/15/10 and 9/30/10.

24. The Plaintiff has not paid the Defendant Hawk the $7,000.00 due on 10/31/10.

### COUNT I

### COMPLAINT AGAINST DEFENDANT HAWK, ONLY, FOR BREACH OF CONTRACT

The above named Plaintiff by and through his attorneys, Herman J. Anderson, PLLC complaining against Defendant Hawk only, says:

25. The Plaintiff re-alleges, re-avers and incorporates by reference, the allegations set forth in paragraphs 8-24.

**THE DEFENDANT HAWK HAS BREACHED COVENANTS CONTAINED IN THE 1ST AND 2ND MORTGAGES**

26. Defendant Hawk breached the covenants contained in the 1st and 2nd mortgages by failing to obtain the written consent of either of Defendant BNY Mellon, or Defendant Chase Bank, the owners of the 1st and 2nd mortgages, before he executed the Contract for Deed ("Land Contract") promising to convey his ownership interest in the real estate by Warranty Deed, to the Plaintiff, upon the fulfillment of the payment terms of the Land Contract.

27. The 1st mortgage executed by the Defendant Hawk on January 14, 2004, at page 11, section 18, states that:

> " As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including.... **contract for deed**"....(emphasis added)
> " If all or in the part of the Property or **any interest in the Property** is sold or transferred...... without Lender's prior written consent, Lender may require payment in full of all sums secured by this Security Instrument." (emphasis added)

28. The 2nd mortgage executed by the Defendant Hawk on April 16, 2004, at page 4, section 14, states that:

> "**Transfer of the Property**. If all or any part of the Property

5

or any interest in it is sold or transferred...... without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage."

29. Defendant Hawk intentionally, willfully and fraudulently concealed and failed to disclose to the Plaintiff that he was required to obtain, pursuant to the above terms and conditions of the 1st and 2nd mortgages that encumbered the real estate, the written approval of both mortgagees, before he could lawfully execute a Land Contract agreeing to sell the real estate to the Plaintiff.

30. The Defendant Hawk did not seek, nor did he obtain from Defendant BNY Mellon, and Defendant Chase Bank, the mortgagees and owners of the 1st and 2nd mortgages that encumbered the real estate, their approval either before or after he sold the real estate on Land Contract to the Plaintiff.

31. Defendant Hawk knew or should have known that it was illegal and a breach of the covenants contained in the mortgages to sell the real estate to the Plaintiff, without first obtaining the approval of the Defendant BNY Mellon, and the Defendant Chase Bank, the mortgagees and owners of the 1st and 2nd mortgages which encumbered the real estate,

32. The Plaintiff relied to his harm damage and injury, on the Defendant Hawk's false representations that he had the legal capacity to sell the real estate on Land Contract to the Plaintiff, without triggering a mortgage default.

**THE DEFENDANT HAWK'S FAILURE TO PAY THE MONTHLY MORTGAGE PAYMENTS AND REAL ESTATE TAXES IS A BREACH OF THE COVENANTS CONTAINED IN THE 1ST AND 2ND MORTGAGES**

33. Defendant Hawk has and is breaching the covenants contained in the 1st mortgage by failing to pay the mortgage payments due for the months of March 2010, thru November 2010.

34. Defendant Hawk has and is breaching the covenants contained in the 2nd

mortgage by failing to pay the mortgage payments due for the months of June 2010, thru November 2010.

35. Defendant Hawk breached the covenants contained in the 1st and 2nd mortgages by failing to pay the 2009 summer real estate taxes assessed against the real estate.

36. Since January 1, 2010, the date that Plaintiff began occupying the real estate as a Tenant, the Plaintiff has paid the Defendant Hawk $34,000.00.

37. The Defendant Hawk has failed to use the $34,000.00 that he received from the Plaintiff for the rental of the real estate to pay to the Defendant BNY Mellon, and the Defendant Chase Bank, the mortgagees of the encumbered real estate, the monthly mortgage payments due and owing beginning on March 1, 2010, and continuing thereafter to the date of this Complaint.

38. The Plaintiff is obligated, pursuant to the terms of the Consent Judgment, to pay the Defendant Hawk an additional $21,000.00 for the rental of the real estate for the months of October, November and December 2010.

39. The Plaintiff should not be required to pay the Defendant Hawk an additional $21,000.00 for the rental of the real estate as mandated by the terms and conditions of the Consent Judgment, because the Defendant Hawk does not intend to use this money to discharge his monthly mortgage obligations, as is required pursuant to the covenants set forth in the 2 mortgages encumbering the real estate. Defendant BNY Mellon has commenced mortgage foreclosure proceedings by advertisement pursuant to the Power of Sale contained in the 1st mortgage. The mortgage foreclosure sale date is December 8, 2010. See Exhibit A, the text of the foreclosure notice for the real estate, published in the Detroit Legal News: on November 5, 2010, its contents being incorporated by reference.

**THE DEFENDANT HAWK HAS VIOLATED THE RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992**

40. Prior to the execution of the land contract and the lease, the Defendant Hawk did

7

not:

(a). Disclose to the Plaintiff, the presence or absence of any known lead-based paint, or any known lead-based paint hazards in, or on the real estate;

(b). Give the Plaintiff a copy of a lead hazard evaluation report, or state that no such report existed;

(c). Advise the Plaintiff of his right to conduct a risk assessment or inspection of the real estate to determine the presence or absence of lead-based paint hazards;

(d). Give the Plaintiff a lead hazard information pamphlet;

(e). Give the Plaintiff a Lead Warning Statement; and

(f). Did not require the Plaintiff to sign a statement stating that He:

(i) Had read the Lead Warning Statement and acknowledge in writing, that he understood its contents;

(ii) Had received a lead hazard information pamphlet; and

(ii) Had a 10-day opportunity (unless the parties mutually agreed upon a different period of time) before becoming obligated under the contract to purchase and/ or lease the real estate to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

**RELEVANT LAW**

41. Defendant Hawk's conduct and/or omissions as described in paragraph 40. above, (the contents being incorporated by reference), i.e. Defendant Hawk's failure to disclose relevant

8

information concerning lead based paint hazards, upon transfer of residential property, violates the provisions of The Residential Lead-Based Paint Hazard Reduction Act of 1992 ["The Lead-Based Paint Hazard Reduction Act"] (42 U.S.C. 63A); Title X of Public Law 102–550 (Oct. 28, 1992; 106 Stat. 3910).

42. The Lead-Based Paint Hazard Reduction Act prescribes the following penalties for violations:

> "(3) Civil liability. Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee, in an amount equal to 3 times the amount of damages incurred by such individual.
> (4) Costs. In any civil action brought for damages pursuant to paragraph (3), the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails."

**THE DEFENDANT HAWK HAS BREACHED THE COVENANTS CONTAINED IN THE LAND CONTRACT**

43. The Land Contract executed by the Plaintiff and Defendant Hawk states [at page 9, Additional Agreements paragraph (2)] that:

> "Seller warrants and represents that he is divorced from Karen Hawk, and that she has no interest in the Property, nor is a party to this Contract. Seller agrees to provide Buyer with a True Copy of the Judgment of Divorce within 30 days of the execution of this Contract."

44. Defendant Hawk did not and has not provided the Plaintiff with a copy of the Judgment of Divorce, nor has he proffered any written evidence in support of his claim that his ex-wife, non- party Karen Hawk, …" has no interest in the Property".

45. There is no evidence of record, (a recorded Deed), that establishes that non- party and ex-wife Karen Hawk, has conveyed her legal and beneficial interest in the real estate to the Defendant Hawk, her ex-husband.

**THE PLAINTIFF'S DAMAGES**

46. The Plaintiff has paid the Defendant Hawk $198,920.00, during the 37-month period

that he has occupied the real estate

47. The prevailing monthly rental charges for comparable real estate is $3,500.00.

48. The Defendant Hawk by virtue of his misrepresentations, deceit, and fraud, has been unjustly enriched and has received $69,420.00 more than he would have received, had he rented the real estate to the Plaintiff and charged Plaintiff $3,500.00 per month, the prevailing monthly rental charge.

**Wherefore**, the Plaintiff moves this Honorable Court for the entry of a Judgment for $69.000.00, plus interest, costs and attorney fees in favor of the Plaintiff against the Defendant Hawk, only; and for such other and further relief as this Honorable Court shall deem just and equitable.

Herman J. Anderson, PLLC

By: s/Herman J. Anderson
  Herman J. Anderson (P10173)
  Patricia A. Green (P62772)
Dated: November 15, 2010    Attorneys for Plaintiff

## COUNT II

**MODIFICATION AND REFORMATION OF THE LEASE**

The above named Plaintiff by and through his attorneys, Herman J. Anderson, PLLC, complaining against Defendant Hawk only, says:

49. The Plaintiff re-alleges, re-avers and incorporates by reference, the allegations set forth in paragraphs 8-48.

50. Although Defendant Hawk has declared that his ex-wife, non-party Karen Hawk has no legal or beneficial interest in the real estate, (See this Complaint, paragraphs 43-45), the Defendant Hawk has not provided any documentation that supports this assertion, nor has a deed been recorded in the office of the Wayne County Register Deeds, divesting non-party Karen Hawk's ownership interest in the real estate.

51. The Lease, which is the subject of this controversy, is neither valid, nor enforceable.

non-Party Karen Hawk, the ex-wife of the Defendant Hawk and co-owner of real estate, did not join in the execution of the Lease, nor did she authorize the Defendant Hawk to Lease the real estate to the Plaintiff.

52. The Lease, which is the subject of this controversy, should be amended to provide that the $5,000.00 monthly rental payment, be paid to Defendant BNY Mellon and Defendant Chase Home Finance, the mortgagees and owners of the 1st and 2nd mortgages.

53. The Lease which is the subject of this controversy, should be amended and modified to provide that the $5,000.00 monthly rental payment be reduced to $3,000.00 per month, a sum that is equal to the prevailing monthly rent charged by the owners of comparable real estate situated in the Grosse Pointe Park, Michigan, Community.

**Wherefore**, the Plaintiff moves this Honorable Court for the entry of:

### I

An Order amending the Lease to provide that the Plaintiff pay the $5,000.00 monthly rental payment to Defendant BNY Mellon and Defendant Chase Bank,

### II

An Order amending the Lease to provide that the $5,000.00 monthly rental payment be reduced to $3,000.00 per month;

### III

An Order amending the Lease to provide that the Plaintiff pay the reduced rent, $3,000.00 monthly rental payment, to Defendant BNY Mellon and Defendant Chase Bank; and

### IV

For such other and further relief as this Court shall deem just and equitable

        Herman J. Anderson, PLLC

By: s/Herman J. Anderson
    Herman J. Anderson (P10173)
    Patricia A. Green (P62772)

Dated: November 15, 2010        Attorneys for Plaintiff

## COUNT III

**COMPLAINT AGAINST DEFENDANT HAWK, ONLY, FOR A PRELIMINARY AND PERMANENT INJUNCTION**

The above named Plaintiff by and through her attorneys, Herman J. Anderson, PLLC, complaining against Defendant Hawk only, says:

54. The Plaintiff re-alleges, re-avers and incorporates by reference, the allegations set forth in paragraphs 8.-53.

55. On August 27, 2010, the Plaintiff filed a motion for RELIEF FROM JUDGMENT (the "motion") in the Grosse Pointe Park Municipal Court (the "Court") in the matter of Kenneth Hawk, Plaintiff v Carl Anderson, Defendant, Case No. 10-211-LT (the "Municipal Court Litigation").

56. The Plaintiff in the Municipal Court Litigation, alleged that the Consent Judgment should be vacated and set aside on the grounds that the action was prosecuted by and the Consent Judgment was procured by Plaintiff Kenneth Hawk's mother, Carol Chaundy ("Chaundy"), a person, who is not authorized to practice law in the State of Michigan.

57. On September 9, 2010, Theodore A. Metry, Plaintiff Kenneth Hawk's attorney, filed an answer to the motion, admitting that Chaundy is not and was not authorized to practice law in the State of Michigan.

58. On September 10, 2010, the motion hearing date, the Court denied Carl Anderson's motion opining that: ..... "I don't have a case and on all fours going one way or the other about a property manager who has a power of attorney filing an action on property the property manager is managing. But -I know it is a common practice .... But -I think it's my-my-my gut is that is proper for someone who has the power of attorney and is managing the property to-to-

to bring the action."

59. On October 13, 2010, Carl Anderson, the Plaintiff in this action and the Defendant in the Municipal Court Litigation, appealed the Court's Order denying the motion in the Municipal Court Litigation, to the Wayne County Circuit Court, the designated appellate tribunal, Civil Action No.10-011918-AV, where it is pending.

60. Kenneth Hawk, the Plaintiff in the Municipal Court Litigation and the Defendant in this litigation should be temporarily restrained and enjoined from applying for a Writ of Restitution to enforce the Consent Judgment rendered in the Municipal Court Litigation, until such time as there has been a final adjudication of the Appeal in Case No. 10-011918-AV.

**Wherefore**, the Plaintiff moves this Honorable Court for the entry of a Preliminary Injunction restraining and enjoining the Defendant Kenneth Hawk, his agents, assigns and all persons acting in concert with him, from applying for a Writ of Restitution in the Municipal Court Litigation, until such time as there has been a final adjudication of the Appeal in case No. 10-011918-AV; and for such other and further relief as this Honorable Court shall deem just and equitable.

Herman J. Anderson, PLLC

By: s/Herman J. Anderson
Herman J. Anderson (P10173)
Patricia A. Green (P62772)
Dated: November 15, 2010                 Attorneys for Plaintiff


### COUNT IV

### COMPLAINT AGAINST DEFENDANTS BNY MELLON AND CHASE BANK, ONLY FOR A DECLARATORY JUDGEMENT

The above named Plaintiff by and through his attorneys, Herman J. Anderson, PLLC, complaining against Defendants BNY Mellon and Chase Bank only, says:

61. The Plaintiff re-alleges, re-avers and incorporates by reference, the allegations set forth in paragraphs 8-60.

13

62. On November 5, 2010, a notice was published in the Detroit Legal News stating that the real estate will be foreclosed and sold by the Wayne County Sheriff or his deputy, at a Public Sale at 1:00 p.m.: December 8, 2010. (See Exhibit A,)

**RELEVANT LAW**

63. The Protecting Tenants at Foreclosure Act of 2009 (Pub. L.        111-22, May 20, 2009,123 Stat.1632) in relevant part states that:

" SEC. 702. EFFECT OF FORECLOSURE ON PREEXISTING TENANCY
  (a) In General — In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to —
  (1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
  (2) the rights of any bona fide tenant, as of the date of such notice of foreclosure —
  (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or
  (B) without a lease or with a lease terminable at will under State law, subject to the receipt by the tenant of the 90 day notice under subsection (1),"

64. The Plaintiff is a protected person and cannot lawfully be evicted from the real estate until 90 days after the statutory redemption period has expired and the successor in interest he has given notice to the Plaintiff to vacate the real estate.

65. The Defendants BNY Mellon and Chase Bank should be required to disclose at the foreclosure sale, that the purchaser of the foreclosed mortgage (the successor in interest) cannot take possession of the real estate until 90 days after the after the 6 month statutory redemption period has expired purchaser of the mortgage real estate has given the Plaintiff notice that he must vacate the real estate.

**Wherefore**, the Plaintiff moves this Honorable Court for the entry of a

## I

Judgment declaring that The Protecting Tenants at Foreclosure Act of 2009 is valid, enforceable and constitutional;

## II

Judgment requiring the Defendants BNY Mellon and Chase Bank, and their agents, to disclose at the foreclosure sale that the purchaser of the foreclosed mortgage cannot take possession of the real estate until 90 days after the 6 month statutory redemption period has expired and the purchaser of the mortgage, has given the Plaintiff notice that he must vacate the real estate; and

## III

For such other and further relief as this Honorable Court shall deem just and equitable.

Herman J. Anderson, PLLC

By: s/Herman J. Anderson
    Herman J. Anderson (P10173)
    Patricia A. Green (P62772)
Dated: November 15, 2010    Attorneys for Plaintiff

# Exhibit A

## PUBLISHED NOTICE
## OF
## MORTGAGE FORECLOSURE SALE

**1012 Three Mile Dr Grosse Pointe Park, MI**

TROTT & TROTT, P.C. Attorneys and Counselors 31440 Northwestern Highway, Suite 200 Farmington Hills, Michigan 48334-2525 THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY. ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Kenneth W Hawk, Married by Janet Ridder his Attorney in Fact, and Karen L Hawk, His Wife by Janet Ridder Her Attorney in Fact, original mortgagor(s), to Chase Manhattan Mortgage Corporation, Mortgagee, dated January 14, 2004, and recorded on February 12, 2004 in Liber 40112 on Page 85, and assigned by said Mortgagee to The Bank of New York Mellon Trust Company, N.A., f/k/a The Bank of New York Trust Company, N.A as trustee for Chase Mortgage Finance Trust Series 2007-A1 as assignee as documented by an assignment, in Wayne county records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of One Million Sixty-Three Thousand Five Hundred Seventy-Seven and 20/100 Dollars ($1,063,577.20), including interest at 3.25% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue, at the place of holding the circuit court within Wayne County, at 1:00 PM, on December 8, 2010. Said premises are situated in City of Grosse Pointe Park, Wayne County, Michigan, and are described as: Lot 18, Henry Russel's Three Mile Drive Subdivision, as Recorded in Liber 36, Page 91 of Plats. The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. Dated: November 5, 2010 For more information, please call: FC S (248) 593-1304 Trott & Trott, P.C. Attorneys For Servicer 31440 Northwestern Highway, Suite 200 Farmington Hills, Michigan 48334-2525 File #335200F01 (11-5)(11-26)

# Exhibit B

**EXCERPT FROM THE TRANSCRIPT OF THE SEPTEMBER 10, 2010, HEARING OF THE DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT**

EXHIBIT B          1 OF 2 PAGES

STATE OF MICHIGAN

IN THE GROSSE POINTE PARK MUNICIPAL COURT IN THE COUNTY OF WAYNE

KENNETH HAWK,

               Plaintiff,

  vs                                        Municipal Court No.
                                                10-211-LT

CARL ANDERSON,

               Defendant.
_____/

DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT PURSUANT TO
MCR 4.210(J)(2)

BEFORE THE HONORABLE CARL F. JARBOE, MUNICIPAL JUDGE

Grosse Pointe Park, Michigan - Friday, September 10, 2010

APPEARANCES:

For the Plaintiff:        MR. THEODORE A. METRY P47087
                                 81 N. Main Street
                                 Mt. Clemens, MI 48043
                                 (586) 463-8555

For the Defendant:        MR. HERMAN J. ANDERSON P10173
                                 P.O. Box 14850
                                 Detroit, MI 48214-9998
                                 (313) 331-2964

Transcribed by:          Marcia Ann Tomkiewicz CER 3654
                                 Certified Electronic Recorder
                                 MAT COURT RECORDING & COURT SERVICES #8338
                                 (313) 278-4439

1

He said, "That's probably correct," and that's where we stand on that.

THE COURT: Okay. All right. Well, all I've got to deal with the case here, and I appreciate the parties giving me their time in answering my questions, and - and helping us get to the bottom of, really, what's been paid or what the Judgment meant, and all that.

But, I - I think it's - I think it's - I don't have a case on all fours going one way or the other about a property manager who has a power of attorney filing an action on property the property manager is managing. But I - I know it is a common practice. I know it happens all the time. There's just not a case one way or the other. But, I - and I - and it - I'm going to a - a judges' - state judges' meeting next week for two days, and I'm gonna ask at the landlord/tenant session about this. But I think it's - my - my - my gut is that it's proper for someone who has the power of attorney and is managing the property to - to - to bring the action. And more importantly, you know, there was a Judgment that was agreed to by the Plaintiff (sic) here. The Plaintiff's not saying they were hoodwinked, or that they - something was misrepresented; there's fraud in the execution or fraud in the inducement; or anything like that. I mean it was a - it was a - a - you know, or that they were drunk or unstable. So, I mean there was a valid - there was